I'd like to reserve two minutes for a rebuttal, if I may, and I'll keep an eye on the clock. Under Duarte Higuereta and Bailon-Santana, a district court must conduct an in-depth colloquy with a criminal defendant who does not speak English before accepting their waiver of a jury trial. Ms. Papachristou, we do have a long line of cases here. Is there any material difference in the fact that Mr. Villegas entered into a fact stipulation that basically practically mooted the question of whether there was a jury trial or not? No. The fact that he entered into a fact stipulation does not matter because this court reviews the error de novo. It would matter if the court applied plain error, but as I've briefed, the court has never applied plain error to this issue. What about invited error? What about invited error? It was a novel situation. The judge sort of, we've all read the transcript, of course, said, what is this? What is it you want me to do? And he proceeded in the way that the defendant requested. Right. Well, actually, the Second Circuit has looked at that specifically and held that even where there is invited error, it should still be reviewed de novo and it still is a structural error. And a fact pattern like this one where they came in and said we're stipulating to all of the elements of the offense and we want you to still do a trial to preserve an issue for the defendant? I'm not sure if the Second Circuit case had a fact stipulation, but I did want to also say that the Laney case in this circuit, there was a partial fact stipulation. This wasn't a partial fact stipulation. This was a stipulation of everything, pretty much, that had to be presented to the judge. Right. Is the end game here to get resentenced? I think the end game is to reverse the conviction because the district court didn't fulfill its responsibility. And then what happened? And then what? Well, Mr. Vegas is not in custody right now. He's on supervised release. So in the event that the court, that he would appear before the court again on supervised release, then I think, yes, there would be, there would have to be a retrial. Has he been deported? Yes. Did, did, did he knowingly and voluntarily enter the fact stipulation? Well, that's the question I think that the district court did not answer. Was there any suggestion that he did not enter into the fact stipulation knowingly and voluntarily? No, but the fact stipulation didn't contain any, didn't contain anything about whether or not it was translated to him by a court certified interpreter. But there was no objection to it. There was no insinuation that it was involuntary or unknowing.  And in other cases where this court has reversed for structural error on the same issue, there were also no objections. Well, the other cases are not, these facts are so unique to this case. We don't, I don't think there's a similar case where the facts have been stipulated into so that there really is no reason for a trial. So that, that's what makes this case a little bit different in my view is that you don't have any, you don't have any deprivation of a trial in essence because all of the evidence was stipulated to. I understand Your Honor's point. Here there was absolutely no colloquy, however, and this court has reversed even where there is, the district court does conduct some colloquy. For example, in the Bailon-Santana case, the defendant. You rest on, I guess, the idea that it's structural error and it's not clear. Our cases sometimes say that, sometimes don't. But the idea of structural error is that once the error occurs, there's no way for a reviewing court to determine whether there's harm or not. What is the, I guess, the upside and downside that we should imagine that would be missed in a structural error here for this denial of a jury trial given that he'd stipulated the facts? I think. And what's the harm? Right. The harm is that this court set out a very clear rule that the district court didn't follow it. Okay, but what, structural error exists for a purpose and that purpose is that we can't imagine what the harm would be downstream from the structural error. What is downstream of this that prejudices Mr. Villegas given the stipulation of the facts it's unchallenged? We don't know what would have happened if the district court had conducted any colloquy at all with Mr. Villegas. We can't reconstruct that. Well, there are two things that could happen, are there not? Either he waives or he doesn't waive the jury trial. If it goes to the jury, what's the harm? Or what's the benefit to him? If it goes to the jury, we don't know what the jury would do. On stipulated facts, could the jury do anything other than rely on the stipulated facts? I'm not sure because it didn't happen. Is there any case that you can, I mean, we're trying to, I get that the cases on the face of them are quite supportive of your position. But none of them, as Judge Rawlinson has said, none of them address this situation. What's your closest case we should be looking at where the trial, you're going into the question of a jury trial or not, with everything stipulated? Well, in other cases, there was actually even more of a colloquy and it was reversed. So I don't have another case where there was . . . But structural error, by definition, is an error, like Batson, right? That's the classic example where we just can't tell what would have happened from the very get-go. That is not this case. Hence my question about invited error, because your client went into the courtroom asking the court to do this very thing, right? And so I struggle for the same reason Judge Johnstone does, I think. Maybe we come at this a little bit differently, but this is not a case where it's difficult for me to understand what would have happened if somebody said, you know, do you understand you have a right to a jury? He's just stipulated to the entire offense. I know you know these facts, but you see why we're grappling with this. We're not fans of busy work, to just remand something back to the district court. Again, I'm not trying to be flip, but right at the get-go, right at the top of the gate here, this is not the kind of case where I struggle to figure out, gee, what would have happened, like I would with a Batson or something like that. So when Judge Johnstone says you've got authority on your side, there's a few places where we've said structural error. There's other places where I think that the briefing stretches and tries to suggest that we said this is structural error. There's certainly places where I think we have, and I'll grant you that. I'm trying to figure out why this is analogous to those situations, because I don't think we've ever done this where the judge was doing exactly what counsel requested. Right. The judge was doing exactly what counsel requested, but the district court also did not speak to Mr. Villegas at all. So I think there's many different rationales for why something is a structural error, and one of them is the inability, as Your Honor has said, to reconstruct what would have happened. Isn't that always the rationale for structural error? When is it not? As I understand it, in the Weaver case, the Supreme Court case that I cited in my briefing, there can be several rationales for why an error is structural, and one of them that's perhaps the most important here is when the right at issue protects some other interest besides avoiding erroneous conviction. So this isn't about avoiding, you know, convicting Mr. Villegas inappropriately or on facts that, you know, don't lend themselves to a conviction. It's about the district court's responsibility to ensure that he understands the right to a jury when he waives it, and I'm running low on time, so I can come back. All right. Thank you, counsel. We'll hear from the government. May it please the Court. Daniel Zip on behalf of the United States. Your Honor, I think the most straightforward way to address this case is just to look at the original language from Duarte Higuereta, which established this colloquy requirement, and that court, the court did not reverse on structural error explicitly. It just said that the adequacy of the jury waiver affected the basic framework of the trial, and we cannot determine whether the effect was harmless. Well, you have to admit that rhymes with structural error. I mean, that's basically, isn't that just what structural error is? Certainly, but... Well, I don't think that case actually necessarily says that it's structural error, but I think we have sense. But then it gets invoked, right? It becomes this... Right. But I'm saying, without addressing whether structural error is clearly irreconcilable in this context, if you go back to the very first cases, this Duarte Higuereta, even that case recognized that it was reversing because they could not tell whether it was harmless or not. In this case, based on these highly unique facts, we can tell if it's harmless. I know, but now you're really making me nervous. If you want us to say that we're blowing through precedent, are you trying to tell us that this satisfies Miller v. Gamble? Surely not? I'm saying, even under the first case, that... What about the subsequent cases? Because of the first case is the one I think I agree with you on. It doesn't really say that necessarily this is structural error. Yes. I think to the extent the later cases have deemed that a structural error, in this context, that would be clearly irreconcilable with what the Supreme Court held in Dominguez Benitez. That's a tough argument. It is. I mean, it is. But I... So is that your... That's what you're basing your ability to survive this appeal on? Is Miller v. Gamble? No. Well, the first argument is... A couple of very skeptical faces looking back at you. I think you saw how precedent fared in the last argument. You were here for that.  And it's fairly rare for us to make a Miller v. Gamble argument. Well, there's a reason this standard's really high. And we're not trying to make jokes here, but we take that very seriously. And we wouldn't want to undermine important precedent about a really important right. It's just that in this case, we don't have a very hard time figuring out what would have happened or whether anyone's substantial rights were really affected here. That's the problem. That's your better argument, frankly. But you concede that there's error in its plane? Yes.  So how... Right. What is the... I guess in terms of maybe the standard review doesn't do any work here. The problem with assigning the plane error analysis to a waiver error is that cases are unclear. Let me know if I'm missing something. But the nature of the waiver is to not contain the objection. But if the underlying waiver is not knowing or voluntary to the client, the objection or not is irrelevant. Is it not? No, Your Honor. Okay. So where would we look for a case where we would do plane error review on a failure to object? I'm not even sure what this would look like, a failure to object while also knowingly and voluntarily.  I think it would be the Supreme Court's case in Dominguez-Benitez, which is in the Rule 11 context. Okay. But that's in the constitutional, right? We're dealing with a constitutional question here. Well, the ultimate purpose of Rule 11 is to determine whether the guilty plea is knowing and voluntary. It's the same issue here. And what the court held there is Rule 11 itself includes a requirement that the court ask the defendant whether he understands that he's giving up the right to a jury trial. Now, failure to object, if the court doesn't do that in that case, is subject to plane error review. It can't be the case that that's plane error, and failure to object to the exact same advisal in this context is somehow subject to knowingly and voluntarily. Why can't it be? One, we're trying to follow Congress's directions, and the other, we're trying to follow the Constitution's directions. I think both the Rule 11 distinction between Dominguez-Benitez and this case, both discuss Rule 11 and Rule 52, which is sort of the general harmlessness standard. And like I said, the ultimate reason for Rule 11 and for Rule 23 in this context is to determine that the defendant's waiver was knowing and voluntary given. The facts of the cases don't have to be identical, just closely related, and it's our position that that sort of, that Rule 11 errors are the same. Then why haven't we applied plane error in any of these prior cases? I don't have a great answer for that. I think the decisions are ultimately shaped by what arguments and issues the parties raise. And you agree that it has been raised before, the government has raised it in at least one of these cases. In the Laney case, yes. What about invited error? I think that we didn't take that position below that this was an invited error. I think the courts expressly asked both parties, is there anything I'm missing here? At that point, neither party said anything. The defense counsel explained why they were going down this route to preserve their appellate rights. And then requested an adjustment, I think, a downward departure, or I guess I should say downward, yeah, because he accepted responsibility by stipulating to the facts. Here's why I'm asking about invited error. It does seem to me to be the case that the judge was doing exactly what the parties asked him to do in a novel situation. And as I read our authorities, I'm looking at Magdalena, the showing required for invited error is did the defendant invite the error, and has defendant relinquished unknown right? It doesn't seem to be quite as rigorous a standard as what we require for waiver. And I think it would be at the top of the decision tree, because what we're grappling with, of course, is we shouldn't be talking about prejudice at all if this is really structural error. Right. And I suppose that if this court were to deem this an invited error as opposed to a plain error, then that would eliminate the need to go through the remaining steps of plain error. It's my question. Can you think of a reason why that wouldn't work? The government didn't argue it. I think typically, invited error would be that the defense counsel themselves proposed a certain instruction or explicitly asked the court to do something. This seems more like the court asking, am I missing anything? And no one raising an objection. So that's why we took the position that it's plain error. But certainly, if the court were- Well, and that also says nothing about Mr. Villegas' voluntary waiver of the rights underneath. Invited error is something that happens between the counsel and the court, where I guess the concern would be maybe, and this is maybe why the government didn't raise it, is if you're asking whether the waiver is involuntary at the client's level, the client doesn't have a say in that. Right. I think if the defense counsel- Except the defense counsel presented the signed waiver. Right. And if the defense counsel had said to the court, you don't need to do a colloquy with my client at this point, then that would be an invited error. But I think- And now you're saying it's not invited error. That's why we took the position below that this seems more like a failure to object than an actual invitation. But again, that would be- What would it look like- We've got the transcript here. What would it have looked like to properly object to the lack of a colloquy? I think it would, when the court said, I'm not familiar with this process, is there anything I'm missing? The defense counsel would have said, Your Honor, under Duarte, you're required to engage with my client individually because he's a Spanish speaker, and that would have- And if the court said no, then that would have preserved the objection. Okay. But we've- I guess it depends on how you characterize the underlying right, and the district court was put in a very difficult position here. But if the underlying, as we've discussed in some of the cases, is in fact a duty of the district court to do this, why would Mr. Villegas' counsel have a duty to sua sponte, raise it in order for it to be preserved? I think the same way that, as the court outlined in Dominguez Benitez, that there are reasons to encourage timely objections, that there's a waste of resources in engaging in the hundreds of hours of briefing that it took in this case, that there has to be- The burden is on the defense to raise an objection on procedural grounds like this in order to preserve. Again, that's in the Rule 11 context, but it's the same issue of whether properly advising a defendant- And your view is that that's an open question before our court is- It's our view that the sort of automatic reversal rule, if that's what it is, in Duarte, is not reconcilable with the later Supreme Court decision in Dominguez Benitez. But you- The Miller v. Gammage. Even if this court doesn't address whether it's plain error, whether it's structural, just going back to sort of the original case, on these unique facts, this court can find that this was harmless and that the same result would have occurred if it was before a jury or before a judge. And even under the holding of Duarte, this does not require- Where should we look to find that we can do, if our cases do say it's structural error at the wholesale level, that we can do a retail-level analysis of not here? Have we or the Supreme Court ever discussed structural error on that kind of case-by-case basis? No. Again, I think it would be just going- All of the cases that have said structural error in this context all trace back to this Duarte case. So to the extent what it was describing did allow some window of harmless error review on these unique facts, the fact that later courts used the word structural I don't think would prevent this court from applying that case to the unique facts of this case. And then we're back to Miller v. Gammage. Not- Well, not necessarily if it's- You're trying to distinguish that case, not say it should be overruled, but you're saying that the rationale of that case- Right. Exactly. I'm saying that that case left at least a window for this court to find harmlessness. In the rare case where you can actually tell that the result would be the same before a judge or a jury, which would be, as the Seventh Circuit said- I agree with you on that case. A dubious proposition. I agree with you on that case. The problem is the subsequent authority is pretty tough for you. What you're really arguing is those subsequent cases weren't very well supported because Duarte didn't say this categorically in the first place. Subsequent cases, some of them have no analysis at all. Correct. And even Duarte, if you look at its reasoning for finding structural error, it was based on a Ninth Circuit case that has been subsequently reversed. I don't think it found structural error. I don't think it found structural error. But anyway, I appreciate your- All right, counsel. Okay. Argument. Thank you. Rebuttal? Thank you, Your Honors. In the Duarte case, this court wrote, when the record reveals a special disadvantage or disability bearing upon the defendant's understanding of the waiver and the district court is on notice, it must conduct an in-depth colloquy before accepting a jury trial waiver. And I understand the court's concerns about the fact stipulation here, but the purpose of the Duarte case, the purpose of crafting the rule, was to make sure that the district court always fulfilled this duty towards defendants with special disadvantages in all circumstances. So I think that does include when there is a fact stipulation. And this court is bound, as is indicated by the subsequent authority to Duarte, to characterize it as structural error and to apply de novo review. The concern I have, to be honest with you, is I think that's a really important principle and cases like this threaten it. To be candid. But I appreciate your argument. I appreciate your advocacy on behalf of your client. It just puts us in a really tough spot. Thank you, Your Honor. I think the district court did not address Mr. Vegas directly at all. And before accepting his waiver, and that's the bottom line, I understand the court's position and that he signed a written waiver in English that did not speak to translation. And he signed a fact stipulation. More importantly, that's the part that, to me, takes this case outside the analysis that was done in Duarte-Gilareda. Because he stipulated to all of the evidence that would be used to convict him. And so to say then that his waiver was involuntary, that's a reach for me. But I understand. I think only under plain error would you get to the fact stipulation. And you don't contend, again, that the stipulation itself was entered involuntarily? No, I do not. Or there's no record one way or the other, but you don't assert that because it wasn't translated that there's anything wrong with the stipulation? Correct. Okay. All right. Thank you, counsel. Thank you. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE